J-S18025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHAWN MATTHEW BECHTEL | : | |
| | : | |
| Appellant | : | No. 1400 MDA 2018 |

Appeal from the PCRA Order Entered July 23, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000376-2014

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED SEPTEMBER 25, 2019**

Appellant Shawn Matthew Bechtel appeals from the order granting, in part, and denying, in part, his first petition under the Post Conviction Relief Act[1] (PCRA).  Appellant argues that trial counsel was ineffective for failing to object to unqualified expert testimony presented by the Commonwealth, failing to consult with or hire an expert to refute the Commonwealth's expert testimony, and failing to present character witnesses on Appellant's behalf. We affirm.

By way of background, Appellant was charged with multiple offenses based on allegations that he sexually abused his minor stepdaughter.  The trial court summarized the facts presented at trial as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[The victim] had been having digestive issues when she was thirteen and fourteen years old for which her doctor had prescribed stool softeners. Around that time, [Appellant] began to examine her naked buttocks for the purported purpose of ensuring her cleanliness. After this occurred a few times, [the victim] told her mother. After [the victim]'s mother spoke to [Appellant], he stopped checking her for a period of time.

Around the beginning of the 2014 school year, [Appellant] began to check [the victim] again. On numerous occasions, he instructed [the victim] to go into her parents' bedroom, take off her pants and underwear and bend over the bed so that he could see whether her buttocks were clean. He would then have her lay on the edge of the bed and spread her legs so that he could check to see that her pubic area and legs were clean-shaven. He would run his hands over her skin and insert his finger into her vagina. He also touched her breasts on top of her skin. [Appellant] engaged in this conduct only when [the victim]'s mother was out of the home working. [Appellant] told [the victim] not to tell anyone. During this time period, [Appellant] also took numerous pictures of [the victim] posing in various positions in various stages of undress, some when she was completely nude.

On January 1, 2014, [the victim]'s mother was at work. One of [the victim]'s brothers was napping and the other was playing video games in another room. [Appellant] instructed [the victim] to go into her parents' bedroom. He had her take off her pants, underwear and shirt and bend over the bed. Afterward, he had her lay face-up on the bed. He touched her vagina and inserted his finger into her vagina. [Appellant] then laid down beside [the victim]. He was wearing elastic-waist pajama shorts. [The victim] explained that she 'ended up on top of him' front-wise and that [Appellant] had her put her head over his shoulder. He then pulled down his shorts and went to stick his penis inside her. [Appellant] was grinding his penis on her vaginal area. She then 'felt like a little bit of like the tip of his penis go inside of me.' She noted that this lasted only a short time and that she did not actually see [Appellant]'s penis. She thought that [Appellant] had ejaculated because she felt wetness around his shorts. At that point, the doorbell rang. [Appellant] got up and left. [The victim] got dressed and went into the living room where [Appellant] was with her two brothers and her grandparents. Prior to this incident, [the victim] had confided episodes of [Appellant]'s previous 'inspections' to a friend during Christmas break. When school reopened on January 2, 2014, her friend reported this information

to the school guidance counselor. When questioned by the school nurse, Marjorie Ober, [the victim] finally related this information to her.

On cross-examination, [the victim] acknowledged that she had been experiencing problems with hygiene and that her mother had discussed the subject with her. [Appellant] also began to discuss grooming of her vaginal area with her. Upon questioning by defense counsel, she stated that she was not certain whether or not [Appellant]'s penis actually went into her vagina, and that he 'may have put' his penis into her vagina. She admitted that she had not actually seen [Appellant]'s penis or the wet spot on his shorts. She explained that she could feel that [Appellant]'s shorts were wet when he pulled them up before he left to answer the door.

The Commonwealth also presented the testimony of Marjorie Ober, Detective Matt Brindley, and Dr. Paula George (the medical director of the Children's Resource Center of Clinical Health in Harrisburg).[2] These witnesses testified as to the accounts of [Appellant]'s conduct which [were] given to them by [the victim]

Detective Brindley recounted that he had met with [the victim] on January 2, 2014. In describing the January 1, 2014 incident, [the victim] had stated that [Appellant]'s penis went inside her vagina a little bit, that it had hurt her, and that she felt wet. She also told Detective Brindley about the photographs. After meeting with [the victim], he had gone to the family home and retrieved an SD camera card from which he obtained thirty-seven (37) pictures of [the victim]. Detective Brindley also described an interview he had conducted with [Appellant] on January 7, 2014. During that interview, [Appellant] admitted that he had been checking [the

_____

[2] Dr. George was called as a fact witness for the Commonwealth. N.T. Trial, 10/18/14, at 106. She stated that the victim was referred to Children's Resource Center based on "suspicion of abuse or assault." *Id.* Dr. George stated that she conducted a sexual assault examination of the victim on January 3, 2014 to determine "if she had any complications or medical problems from the events she reported." *Id.* Dr. George testified that she did not observe any evidence of physical assault on the victim's body. *Id.* at 116. However, she stated that finding physical evidence is "unusual" and is only found in "about five percent of children that we examine more than a couple days after a reported event." *Id.* at 117, 119. Dr. George did not make a conclusion as to whether the victim was sexually assaulted.

victim], but insisted that he was doing so due to her hygienic problems. He initially denied taking the pictures, but then admitted that he had taken them after he was informed that they had been recovered. With regard to January 1, 2014, he admitted that he had [the victim] get naked, had rubbed her breasts and that they had ended up in his bed. He insisted, however, that he only touched the top of her vagina and that he had remained clothed. He admitted that he had kissed [the victim] on the neck and that he was aroused, had an erection, and had some pre-ejaculate from his penis. He further insisted that when [the victim] asked him to stop, he did so immediately. He claimed that he never penetrated [the victim]'s vagina with either his fingers or his penis. [Appellant] stated to Detective Brindley that he was sorry for his actions and that he had let his family down.

At trial, [the victim]'s mother also testified. She indicated that [the victim]'s date of birth was [in] 1999 and identified her as the person in the pictures which were developed from the SD card from their home. She testified that she had never asked [Appellant] to check [the victim]'s buttocks or vaginal area to make sure that she was clean and shaven.

The defense presented the testimony of Evelyn Lopez, a child protective caseworker with Lebanon County Children and Youth Services. Lopez had interviewed [the victim] along with Detective Brindley on January 2, 2014. She was also present to observe an interview with [the victim] at the Children's Resource Center on January 3, 2014. Lopez indicated that [the victim] had reported that [Appellant had] placed his finger(s) inside of her vagina and that he 'may have put his penis inside of her.' Lopez recalled that [the victim] stated that 'she felt as though his penis went into her vagina.' Lopez's report also indicated that [the victim] had told her that [Appellant] had placed his hands down her pants and massaged her vaginal area.

[Appellant] also testified at the jury trial. [Appellant] indicated that he was thirty-five years of age at the time of trial and that [the victim] was his stepdaughter. He explained that beginning in seventh grade, [the victim] had begun experiencing digestive problems for which the doctor had prescribed a stool softener. Due to [the victim]'s problems with proper hygiene, her school had notified [Appellant] and his wife that she sometimes had an odor and would be sent home from school in the future if the problem continued. [Appellant] and his wife addressed the hygiene issue with [the victim] and they began to make sure that

- 4 -

she cleaned herself properly and shaved her armpits and legs. He insisted that he and his wife checked [the victim] on a regular basis and that he would only inspect her on his own if he detected an odor while his wife was at work. He insisted that he never touched her during these checks.

[Appellant] admitted that he had taken pictures of [the victim] but insisted that prior to January 1, 2014, he had never had physical contact with her. He explained that on that date, he had [the victim] go into his bedroom and she took off her pants and underwear. He claimed that previously, he only had her pull her pants down but that she removed them of her own accord on that day because her pants were too tight. He admitted that he asked her to take off her top. He kissed [the victim] on the neck and she sat on the edge of the bed. He motioned her to slide back on the bed and he then laid down beside her. He admitted that he touched and moved his hand around her breasts, and then ran his hand down her stomach to her vaginal area. He claimed that he had moved his hands around on her breasts, but not on her genitals. He further admitted that he was aroused and had an erection. At that point, [the victim] asked him to stop and he did so. As she went to get off the bed, she straddled him and then sat down on his crotch. It was painful when [the victim] sat down on him and he lost his erection. He claimed that he pulled her down on him because of the pain. He also claimed that [the victim] leaned over to hug him and her body shifted his pants down. He insisted that his penis never became exposed from inside his shorts. He further insisted that he did not penetrate [the victim]'s vagina with his finger or his penis.

Trial Ct. Op., 7/15/15, at 2-8.

On October 8, 2014, a jury convicted Appellant of statutory sexual assault, aggravated indecent assault, corruption of minors, and indecent assault.[3] On March 17, 2015, the trial court determined Appellant was a sexually violent predator (SVP) and sentenced him to an aggregate term of three to ten years' incarceration. This Court affirmed the judgment of

---

[3] 18 Pa.C.S. §§ 3122.1(b), 3125(a)(8), 6301(a)(1)(i), 3126(a)(8).

sentence on February 2, 2016, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Bechtel*, 1260 MDA 2015 (Pa. Super. filed Feb. 2, 2016) (unpublished mem.), *appeal denied*, 141 A.3d 477 (Pa. 2016).

On March 24, 2017, the PCRA court docketed Appellant's timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition on July 18, 2017. On November 30, 2017, the PCRA court held an evidentiary hearing.[4] At the hearing, Appellant testified in support of the following relevant ineffectiveness claims.

First, Appellant testified that trial counsel was ineffective for failing to object to testimony from Dr. George, who testified as a lay witness for the Commonwealth. N.T. PCRA Hr'g, 11/30/17, at 13. Appellant explained:

> Well, her comment was that basically only in five percent of cases is DNA ever found, that that [sic] is pretty much as rare—the fact is that it's medical evidence as well as the fact that the tests had occurred less than 48 hours after the alleged incident.
>
> There's no way if what the accusations were that even taking a shower or anything else would have removed scientific DNA evidence. That was her opinion, not fact.

*Id.*

Second, he testified that trial counsel was ineffective for failing to consult with or present an expert witness to rebut Dr. George's testimony.

---

[4] At the hearing, the PCRA court allowed Appellant to raise an additional PCRA issue challenging his SVP designation in light of *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017) and *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017).

*Id.* at 13.   Regarding counsel's advice about an expert, he stated that trial counsel "never made [a] comment other than he said that there's a chance of hiring one, but they are too expensive, that we should just go with what we had."  *Id.*   Appellant further testified that "[i]t wasn't really so much of a discussion *per se*, as he brought up in conversation that we have the ability to [hire an expert], but he advised against it because of their price.  He said it would run around $15,000.  It was never brought up again." *Id.* at 13-14.

Third, Appellant testified that he asked trial counsel to call two character witnesses—his church pastor, Reverend Julie Bell, and his friend, Corey Sorenson. *Id.* at 12.  He stated that "[t]hey could have testified to the deeds I've done for the community as well as the type of person I am." *Id.* at 17. Specifically, Appellant wanted to demonstrate "that I go out of my way to help people" and "that I'm essentially not a bad person. . . .  I am a good member of the community.  Even the fact of my own family's home life and the fact that they witnessed how our family life is at home." *Id.*  Appellant stated that although he provided the witnesses' contact information, trial counsel did not call them to testify. *Id.* at 12.

Trial counsel also testified at the PCRA hearing.  Appellant did not elicit testimony from trial counsel regarding his reasons for failing to object to Dr. George's testimony.  However, trial counsel explained that part of his defense strategy was to focus on the lack of physical evidence and to show that Appellant "acknowledged the things that he did do, but would not admit to things that he did not do." *Id.* at 26.  He stated that Dr. George's testimony

confirmed that there was no physical evidence that Appellant penetrated the victim. *Id.* Trial counsel acknowledged that Dr. George was never formally qualified as an expert, but explained that "[n]onetheless, you know, she had indicated that she was Board certified in child abuse and pediatrics and had conducted numerous examinations of children who had been alleged victims of sexual assault." *Id.* at 33.

With respect to calling a rebuttal witness, trial counsel testified that, given Dr. George's testimony that there was no DNA evidence or physical evidence of sexual abuse, he did not "understand how bringing in any other witness would in any way support our defense that this never occurred." *Id.* He also stated that he never gave Appellant any price for an expert, as he never looked into hiring one. *Id.* at 25.

Finally, trial counsel testified that he discussed the possibility of character witnesses with Appellant prior to trial. *Id.* at 26. Specifically, he explained:

> I did speak to—I have a specific recollection of Reverend Bell, having a conversation with her. Again, part of the problem in this case is that clearly by his own words that he had committed crimes contrary to anyone's testimony of good character, certainly his own account of things that he did, taking pictures of his stepdaughter while she was nude, touching her across her breasts while she was on top of him on the bed, are so contrary to any person of good character, certainly I don't see any benefit to calling such a witness when ultimately we're talking about just the denial there was any particular penetration involved here.
>
> Secondly, again, as [Appellant] had testified to, it is not what their personal opinions are. It's whether or not they're familiar with his reputation in the community.

***Id.*** at 26.

At the conclusion of the hearing, the PCRA court took the matter under advisement and directed the parties to submit memorandums of law. Both parties timely complied. On July 23, 2018, the PCRA court issued an order granting, in part, and denying, in part, Appellant's petition.[5] The PCRA court also issued an opinion addressing Appellant's claims.

On August 22, 2018, Appellant filed a timely notice of appeal. On September 18, 2018, Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.[6]

Appellant raises the following issues for our review:

1. Was trial counsel ineffective because he failed to object to the Commonwealth eliciting what amounted to expert trial testimony from Dr. Paula George whom the Commonwealth failed to qualify as an expert?

2. Was trial counsel ineffective because he failed to consult with or hire an expert to refute the trial testimony of Dr. Paula George?

3. Was trial counsel ineffective because he failed to present character witnesses to testify to Appellant's good character for truthfulness and honesty?

Appellant's Brief at 4 (some capitalization omitted).

_____

[5] The PCRA court granted the portion of Appellant's petition challenging his SVP designation and ordered that Appellant be issued an amended registration notice setting forth his registration requirements under 42 Pa.C.S. § 9799.23.

[6] Appellant raised several issues in his Rule 1925(b) statement that he has abandoned on appeal. ***See Commonwealth v. Dunphy***, 20 A.3d 1215, 1218 n. 2 (Pa. Super. 2011) (stating that claims raised in a Rule 1925(b) statement but not addressed in an appellate brief are considered abandoned on appeal).

Our review of the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (quotation marks and citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). We review "the PCRA court's legal conclusions *de novo*." *See Miller*, 102 A.3d at 992 (citation omitted).

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffectiveness, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). A petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." *Id.* (citation omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis

for the assertion of ineffectiveness is of arguable merit[.] Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa. Super. 2017) (citations and quotation marks omitted), *appeal denied*, 179 A.3d 6 (Pa. 2018).

"With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011) (citation and quotation marks omitted). "When the petitioner is granted a PCRA hearing, it is his burden to satisfy this aspect of the test with direct questioning of trial counsel." ***Commonwealth v. Weiss***, 81 A.3d 767, 798-99 (Pa. 2013) (citations omitted). "We will conclude that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Chmiel***, 30 A.3d at 1127 (citation and quotation marks omitted).

Additionally, we note that "[c]ounsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel." ***Commonwealth v. Koehler***, 36 A.3d 121, 146 (Pa. 2012) (citation omitted).

In his first issue, Appellant asserts that trial counsel was ineffective for failing to object to Dr. George's testimony. Appellant's Brief at 12. Appellant argues that

> Dr. George was never qualified or proffered as an expert witness and improperly gave causation testimony that [the victim's] lack of injuries did not preclude what [the victim] said occurred. Specifically, Dr. George testified that based on her training and experience that the lack of injuries is not unusual, and that it is unusual to find physical evidence of something that has occurred. Dr. George[] testified for approximately another five (5) pages of the trial transcript regarding [the] rarity of finding physical evidence of sexual assault to include that "[o]nly about five percent of children that we examine more than a couple days after a report[ed] event, only about five percent of them have any evidence that I would say virtually all of them have told me about pain and bleeding." Dr. George's testimony . . . blurred the line between factual, lay-witness observations and expert testimony requiring specialized knowledge because no safeguards were requested and therefore no safeguards were employed by the trial court to ensure that the jurors could separate expert opinions from the lay testimony. Accordingly, trial counsel was ineffective for not objecting to what amounted to expert testimony provided by Dr. George and [Appellant] should be granted a new trial.

*Id.* at 12-13.

"The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." ***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa. Super. 2014) (citations omitted).

When a witness's testimony is based on "scientific, technical, or other specialized knowledge . . . beyond that possessed by the average layperson," the witness must be qualified as an expert "by knowledge, skill, experience,

- 12 -

training or education." Pa.R.E. 702(a). Pennsylvania Rule of Evidence 701 permits a lay witness to offer opinion testimony so long as the opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701. "Thus, an expert must have additional specialized knowledge in rendering an opinion; whereas, a lay witness must form an opinion based upon his or her rationally based perceptions." *Commonwealth v. Huggins*, 68 A.3d 962, 967 (Pa. 2013) (citing Pa.R.E. 702; Pa.R.E. 703).

In support of his claim, Appellant cites to *Commonwealth v. Yocolano*, 169 A.3d 47 (Pa. Super. 2017). In *Yocolano*, the defendant was charged with several offenses after he violently assaulted his former girlfriend. *See Yocolano*, 169 A.3d at 50-51. At trial, the Commonwealth presented testimony from the emergency room doctor and nurse who treated the victim. On appeal, we explained that

> [t]he trial court permissibly allowed Nurse Taylor and Dr. Ung to describe the injuries that they personally observed when treating [the victim], most notably ligature and strangulation marks. . . .
>
> However, the Commonwealth then asked each witness whether [the victim's] account of events was consistent with her injuries. These conclusions required causation expertise and there was no proffered evidence that Dr. Ung or Nurse Taylor regularly examined ligature and strangulation marks or had scientific knowledge on the subject. . . . While the hospital staff members in this case could have testified as both lay and expert witnesses under [*Huggins*, 68 A.3d at 967], the Commonwealth did not provide notice or expert reports to Appellant prior to trial and

- 13 -

there were no additional safeguards employed by the trial court to ensure that the jurors could separate expert opinions from the lay testimony. Hence, we discern the trial court abused its discretion and erred as a matter of law in permitting proffered lay witnesses to offer expert opinions at trial.

*Id.* at 63. The *Yocolano* Court did not address whether this error alone constituted harmless error. *See id.* Rather, the Court found that the cumulative effect of this error and two other improper evidentiary rulings required a new trial. *Id.* at 64.

Here, the PCRA court concluded that Dr. George's "testimony that the absence of injuries of a victim of sexual assault victim does not preclude the possibility that sexual abuse has occurred may properly be a subject for an expert opinion." PCRA Ct. Op., 7/23/18, at 8. Nevertheless, the PCRA court found that "it was reasonable for trial counsel to refrain from entering an objection to Dr. George's testimony when it did not corroborate the victim's testimony and was consistent with the defense strategy at trial." *Id.* at 10. Moreover, the PCRA court concluded that trial counsel's failure to object did not prejudice Appellant. *Id.* at 8.

Based on our review, we discern no basis to disturb the PCRA court's conclusions. The trial court erred by allowing expert testimony from a witness who was not properly qualified as an expert. Nonetheless, although Dr. George's testimony was improper,[7] Appellant did not establish that trial

_____

[7] It is unclear why the Commonwealth did not formally qualify Dr. George as an expert witness. Dr. George testified that she has been practicing pediatric

- 14 -

counsel lacked a reasonable strategic basis for his inaction. *See Weiss*, 81 A.3d at 799. Further, Appellant has failed to provide any basis for this Court to conclude that but for trial counsel's failure to object, there is a reasonable probability that the outcome of the trial would have been different. *Washington*, 927 A.2d at 594. Accordingly, no relief is due.

In his remaining issues, Appellant argues that trial counsel was ineffective for failing to call witnesses. Our Supreme Court has explained that

> [w]here a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant.

*Chmiel*, 30 A.3d at 1143 (citations and quotation marks omitted).

Appellant first argues that counsel was ineffective for failing to consult with or hire an expert witness to rebut Dr. George's testimony. Appellant's Brief at 13. He explains that part of the defense strategy was that "there was no physical evidence to corroborate [the victim's] allegations" and "[b]ased on that defense, [trial counsel] felt utilizing their own expert was not necessary" because Dr. George did not find any physical evidence of sexual abuse. *Id.* at 14. However, at trial, Dr. George testified that "the lack of

_____

medicine for roughly thirty-five years. *See* N.T. Trial, 10/8/14, at 104. She stated that she is board certified in both pediatrics and child abuse pediatrics. *Id.* Dr. George estimated that she has personally evaluated between 3,000 to 5,000 children who have been victims of abuse, in addition to "many thousands in general pediatrics." *Id.* at 106.

physical evidence did not preclude [the victim's] allegations." *Id.* at 14-15.

Appellant concludes that "[b]ecause [trial counsel] had neither consulted with

nor hired his own expert[, Appellant] was left with no adequate response to

Dr. George's conclusory opinion." *Id.* at 15.

Our Supreme Court has held that

[t]he mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance [the] appellant's cause. Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony.

*Chmiel*, 30 A.3d at 1143 (citations and quotation marks omitted).

Here, the PCRA court addressed Appellant's claim as follows:

Counsel noted that of the twenty to thirty cases he had tried involving vaginal penetration he had never had an expert testify to confirm that there is no physical evidence relative to an assault. He explained that, based on his experience, he saw no strategic reason to hire an expert.

So we may have discussed potentially hiring some expert witness to confirm what Dr. George had testified to. Certainly, I don't even know where he is coming up with this 15,000 figure, as I hadn't even looked into finding some other expert witness in that area.

[B]ased on what Dr. George had indicated in her findings and based upon what she had testified to here and based upon what [the victim's] accounts were, again, there was no DNA evidence to support her claim, there was no injury to support her claim, I don't understand how bringing in any other witness would in any way support our defense that this never occurred.

We find that trial counsel's decision to forego objection to Dr. George's testimony and/or to have [Appellant] hire his own expert

- 16 -

to be reasonably calculated to further [Appellant's] interest. Dr. George made no comment on the veracity of the victim and her observation was neutral as to whether the incidents described by the victim had actually occurred. Her findings were not at odds with the defense's theory of the case as she found nothing to affirmatively suggest that the acts had occurred. We see nothing to indicate that there would have been a different outcome had [Appellant] gone to the expense to present his own witness.

PCRA Ct. Op., 7/23/18, at 9-10.

Based on our review of the record, we discern no basis to disturb the PCRA court's determination. *See Chmiel*, 30 A.3d at 1127; *Miller*, 102 A.3d at 992. Further, we emphasize that Appellant did not establish that an expert existed and was available to testify on his behalf. *See Chmiel*, 30 A.3d at 1143 (stating that to establish ineffectiveness for failing to call expert witness, appellant must demonstrate expert existed and was available). In light of the relevant case law and applicable standard of review, we conclude that Appellant's claim also fails for lack of arguable merit. *See Smith*, 167 A.3d at 788; *Miller*, 102 A.3d at 992.

Appellant next argues that trial counsel was ineffective for failing to call character witnesses who would have testified to Appellant's "general reputation in the community for truthfulness and honesty." Appellant's Brief at 16. Appellant does not develop his argument beyond this general assertion.[8]

---

[8] Appellant has arguably waived his claim by failing to adequately develop the argument in his brief. However, Appellant raised a more specific version of this claim in his PCRA petition and at the PCRA hearing. Therefore, because

- 17 -

We have explained that

[e]vidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. Such evidence must relate to a period at or about the time the offense was committed and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

*Commonwealth v. Radecki*, 180 A.3d 441, 453–54 (Pa. Super. 2018) (citation omitted).

"While character witnesses may not be impeached with specific acts of misconduct, a character witness may be cross-examined regarding his or her knowledge of particular acts of misconduct to test the accuracy of the testimony." *Commonwealth v. Treiber*, 121 A.3d 435, 464 (Pa. 2015) (citation omitted); *see also* Pa.R.E. 608. "The failure to call character witnesses does not constitute *per se* ineffectiveness." *Treiber*, 121 A.3d at 463 (citation omitted).

Here, the PCRA court addressed Appellant's claim as follows:

At the PCRA hearing, trial counsel explained that he had spoken with Reverend Bell. However, he recalled that Reverend Bell was only able to provide her own opinions regarding [Appellant], and was not familiar with his general reputation in the community. Moreover, he did not feel that any character evidence that could have been offered by any of the proposed witnesses would have

---

we are able to conduct meaningful appellate review, we decline to find waiver. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (stating that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant," and we may find issues waived if the defects in an appellate brief impede meaningful review).

helped [Appellant] in light of his admissions that he had taken nude photos of his stepdaughter, had touched her breasts while she was on top of him in bed, and had initially denied that he had sexual contact with the victim to his wife and law enforcement. We accept trial counsel's judgment as reasonable in this regard under these circumstances.

PCRA Ct. Op., 7/23/18, at 13.

Based on our review of the record, we discern no basis to disturb the PCRA court's determination. *See Chmiel*, 30 A.3d at 1127; *Miller*, 102 A.3d at 992. The PCRA court credited trial counsel's testimony that Reverend Bell could not provide information about Appellant's reputation in the community. Therefore, her testimony would have been inadmissible. *See* Pa.R.E. 608, cmt. (stating that "Pa.R.E. 608(b)(1) prohibits the use of evidence of specific instances of conduct to support or attack credibility"). Further, in light of Appellant's own admission that he lied to both law enforcement and his wife about taking nude photographs of the victim, it was reasonable for trial counsel to conclude that character witnesses would provide no benefit to the defense. *See* Pa.R.E. 608(b)(2) (stating that a character witness "may be attacked by cross-examination concerning specific instances of conduct . . . if they are probative of truthfulness or untruthfulness").

Therefore, we conclude that the PCRA court properly determined that trial counsel had a reasonable basis for his inaction, and we decline Appellant's invitation to second-guess trial counsel's strategy. *See Chmiel*, 30 A.3d at 1127; *see also Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012) (stating that ineffectiveness claims "generally cannot succeed 'through

comparing, in hindsight, the trial strategy [actually] employed with alternatives not pursued.'" (citation omitted)).

       Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>09/25/2019</u>